(C.D. 2348)

ALUMINUM COMPANY OF AMERICA *v.* UNITED STATES

United States Customs Court, Second Division

(Decided June 20, 1962)

*William K. Unverzagt* for the plaintiff.
*Joseph D. Guilfoyle,* Acting Assistant Attorney General (*Alfred A. Taylor, Jr.,* and *Sheila N. Ziff,* trial attorneys), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: The Aluminum Company of America imported a commodity described on the consular invoice as "ALUMINUM POWDER (S.A.P. 865)."

The merchandise was classified by the collector of customs as an article in chief value of metal, not specially provided for, in paragraph 397 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 397), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, and duty was assessed thereon at the rate of 22½ per centum ad valorem.

The plaintiff-importer relies upon the claim in its protest that the importation should properly have been classified as aluminum bronze powder in paragraph 382(a) of said act (19 U.S.C. § 1001, par. 382 (a)), as modified by the Torquay protocol to said general agreement, 86 Treas. Dec. 121, T.D. 52739, supplemented by Presidential notification, 86 Treas. Dec. 337, T.D. 52820, and subjected to duty at the rate of 6 cents per pound. All other claims in the protest, having been abandoned, are dismissed.

The pertinent text of the competing paragraphs is here set forth. Paragraph 397 of the Tariff Act of 1930, as modified, *supra*:

Articles or wares not specially provided for, whether partly or wholly manufactured:

\*      \*      \*      \*      \*      \*      \*

Composed wholly or in chief value of \* \* \* aluminum \* \* \*
Woven wire fencing and woven wire netting \* \* \*

\*      \*      \*      \*      \*      \*      \*

Other \* \* \*_____ 22½% ad val.

Paragraph 382(a) of said act, as modified, *supra*:

Aluminum bronze powder, and powdered foil_____ 6¢ per lb.

The record, upon which this case was submitted for decision, consists of the testimony of three witnesses, one for plaintiff and two for defendant, and numerous exhibits which will be referred to, *infra*.

John Paul Lyle, Jr., witness for the plaintiff-importer, testified that he is employed by the Aluminum Company of America (hereinafter referred to as Alcoa) at the Alcoa Research Laboratory plant. He received a bachelor of science degree in chemistry from Birmingham Southern College and a master's degree in metallurgy from the University of Wisconsin. Upon completion of his studies, he was employed by Alcoa as a research engineer and presently is assistant chief of the fabricating metallurgy division in the Alcoa Research Laboratory. Lyle stated that he has observed the process of making aluminum powder and had written three articles on the subject which have been published in various scientific journals.

In connection with his work at Alcoa, Lyle's particular field of concentration is aluminum powder metallurgy which involves the manufacture of aluminum powder, the compacting of the powder, and the further fabrication of the powder compacts into wrought aluminum products.

There is evidence of record to indicate that the method of manufacture of the S.A.P. 865 powder in issue is as set forth in United States Patent Office, Letters Patent No. 2,678,880 (plaintiff's exhibit 2), under the caption "*Example 2*," the specific details of which need not here be set forth.

In explanation of the meaning of "powder compact," witness Lyle explained that loose aluminum powder is packed in a cylinder. Pressure applied thereto by means of a piston and the simultaneous application of heat result in changing the powder into a compact form. As to how the powder compacts are fabricated into wrought aluminum products, Lyle testified that an extrusion press is most frequently used although the fabrication is sometimes performed by forging. The resultant wrought products would be extrusions, tubing, wire, sheet, and so forth.

Lyle stated that the trade definition of aluminum bronze powder is a powder of pure aluminum, which is characterized by a flakelike structure, and added that there is no bronze in aluminum bronze powder. The imported S.A.P. 865 powder was used by the plaintiff company in its powder metallurgy program. A photomicrograph of the powder in issue was made under Lyle's direction and depicts a cross-section of the powder magnified 500 times (plaintiff's exhibit 3).

Plaintiff's witness further testified that Alcoa makes domestically and sells aluminum bronze powder under the trade name of "Albron," which is a contraction of aluminum and bronze. A photomicrograph of the Albron powder magnified 500 times was received in evidence as plaintiff's exhibit 4.

Referring to the photomicrograph of the S.A.P. 865 powder (plaintiff's exhibit 3), Lyle stated that it shows the powder to be made up of many small flakes. With the letter "A," he indicated on said exhibit an area which clearly shows the flakelike structure and added that there are many other portions of the exhibit which clearly indicated such a structure to him. Although the gross particle is granular, it is flakelike in structure, one of such particles being indicated on exhibit 3 with the letter "B," within which the letter "A" indicates one of many large flakes that go to make up the total particle marked "B."

When Lyle was asked to explain the similarity or dissimilarity between Albron powder and S.A.P. 865 powder, as represented by plaintiff's exhibits 3 and 4, he stated that the Albron powder is characterized by having the flakes more clearly separated, but that there is an indication of an agglomeration of such flakes which he indicated on exhibit 4 with the letter "C." The tendency to agglomeration is found in the S.A.P. 865 powder to a greater extent, but the type of construction in the Albron powder is the same as in the S.A.P. 865 powder. Whether or not such agglomeration is desirable depends entirely upon the use to be made of the powder. Inasmuch as Alcoa was going to use the S.A.P. 865 powder for powder metallurgy, the agglomeration was desirable.

A sample of an extrusion made from S.A.P. 865 powder was received in evidence as plaintiff's exhibit 6.

When asked by the court if there are any variances in the physical and chemical makeup between S.A.P. powder and aluminum bronze powder, witness Lyle stated the chemical makeup of S.A.P. powders and some of the aluminum bronze powders "can be" the same. As to the physical appearance, the aluminum bronze powders are characterized by a flake structure, in which case the flakes are substantially separated from one another. The S.A.P. powders are the same but the flakes are stuck together and can be seen by a very high magnification,

although a superficial examination will disclose a granular appearance.

Defendant's witness, Joseph Lamb, assistant chief chemist in the United States Customs Laboratory in Philadelphia, stated that he has a bachelor of science degree from the University of New Hampshire and, after various employments, became associated with the United States Customs in its laboratories in 1937. In the course of his employment as assistant chief chemist, he received two samples of the imported merchandise for analysis. The first sample was received in evidence as defendant's exhibit A, and Lamb's analysis thereof was received, with certain qualifications, as defendant's exhibit B. The second sample was received in evidence as defendant's exhibit D and his analysis thereof, with qualifications, as exhibit C. Lamb stated that, in making his analysis of the samples of the imported merchandise, he determined the metallic content in accordance with one of the standard procedures and found it contained 86 per centum of metallic aluminum, the remainder being chiefly aluminum oxide, and it was his finding that the particles were granular and not flakelike.

Defendant's second witness was Francis B. Rethwisch, presently product director of the Reynolds Metal Co. Prior thereto, he had been chief chemist of the powder and paste division of the Reynolds Co. for 15 years. He holds a bachelor of science and master of science degree from the University of Louisville, Ky. While employed with Reynolds, Rethwisch had specialized primarily in aluminum powders and paste.

The Reynolds Metal Co. makes and sells aluminum bronze powder and Rethwisch has witnessed the actual production of such powders. When asked whether there is a trade definition of aluminum bronze powder, the witness replied that "usually it is considered a flaked powder used for pigment purposes." He added that there is a definite relationship between the flakelike structure of such powder and its use in pigments because if the structure is granular a good film would not result, and the material could not very well be used as a paint. A flaked structure is characteristic of aluminum bronze powder, and the flakes appear under a microscope as flat thin particles, separate and not bonded.

When shown plaintiff's exhibit 3, a photomicrograph of the S.A.P. 865 powder in issue, Rethwisch stated that it disclosed a basically granular material, that a powder of the granular type is not suitable for use as a pigment and would not be considered an aluminum bronze powder. The use of aluminum bronze powder is primarily as pigments whether in paints, protective coatings, or plastic, and some flakes are also used for pyrotechnic purposes.

Rethwisch stated that there is a simple test for determining whether or not aluminum powder can perform as a pigment in the manner of an aluminum bronze powder, which is by dispersing the powder in a varnish designed for use as an aluminum vehicle. If the powder does not disperse and does not perform as a pigment after being mixed with the varnish, it would not come within the trade meaning or understanding of aluminum bronze powder. After such a test was made during the course of the trial, with the use of the S.A.P. 865 powder in issue (exhibit D), some Baer's bronze powder (exhibit H-4), and an aluminum bronze powder manufactured by Reynolds (exhibit F), the witness stated, based upon said test and an examination of the photomicrograph in evidence and upon his years of experience working with aluminum powder, that the S.A.P. 865 powder did not display the usual flake form in appearance, either in a paint film or as a dry powder to the naked eye.

When asked if the imported powder is similar to any other type of aluminum powder, the witness stated that basically it is a type or class by itself.

In answer to a question from the bench to explain in what way the use of S.A.P. powder differed from the use of aluminum powder, Rethwisch stated that S.A.P. powder is used primarily for metallurgy purposes—specifically for use where strength retention under elevated temperatures is desired or required—whereas aluminum bronze powder is used chiefly as a pigment for paints.

When asked on cross-examination if it were not true that the prime characteristic of aluminum bronze powder is its flakelike structure, rather than the use to which the powder is put, Rethwisch replied that as used in the paint trade the answer was "No." The term aluminum bronze powder, for the most part, has been a paint designation and has been so used.

The question before the court to be determined is whether the S.A.P. 865 powder in controversy is, in fact and in law, aluminum bronze powder within the meaning of that term in paragraph 382(a) of the Tariff Act of 1930, as modified by the Torquay protocol, *supra*.

In arriving at a determination, it is interesting to note the specificity of paragraph 382(a) as it appeared in the basic tariff act, pertinent provisions of which are here set forth:

Tin foil * * *; aluminum foil * * *; bronze powder not of aluminum * * *; aluminum bronze powder, powdered foil, powdered tin, flitters, and metallics, manufactured in whole or in part * * *; bronze, or Dutch metal, or aluminum, in leaf * * *; or aluminum powder, in leaf * * *.

From the foregoing, it appears that Congress used great care in providing for particular metal materials.

In determining the intent of Congress, when it provided specifically for aluminum bronze powder, reference is made to pertinent tariff information which Congress presumably had before it when enacting paragraph 382(a) of the basic act and its rate modification in the Torquay Protocol to the General Agreement on Tariffs and Trade.

We quote from the Summary of Tariff Information, 1929, as follows:

### BRONZE POWDER

Description and uses.—Bronze powder is metal powdered to extreme fineness. The raw material is not confined to bronze; in fact, aluminum, brass, and other metal powders are all known in the trade as bronze powder, the name being qualified by a descriptive adjective, such as aluminum, pale gold, rich gold, copper, green, blue, lemon, etc. There are about 10,000 shades and grades of bronze powder. These powders are the coloring base of all of the metallic pigments in paints. Except in the case of aluminum bronze powder, which is also used in the manufacture of fireworks, they have no other important commercial use.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

### ALUMINUM POWDER AND POWDERED FOIL

Description and uses.—Aluminum powder and powdered foil are identical articles, made by a stamping process by which the aluminum is beaten by machinery into minute flakes. In connection with paint, aluminum powder is erroneously called aluminum bronze powder. Aluminum powder is graded according to fineness of the flakes, there being 12 or more marketable grades.

The principal uses of aluminum powder are: In the aluminothermic (or thermit) process for the reduction of refractory oxides and the preparation of metals and alloys; in the thermit-welding process for repairing iron and steel, and for joining rails and other structures; in the calorizing process for coating metal parts with aluminum; in the manufacture of certain explosives; as a pigment for paint; and as a foundation for bronze powders, in which it is stated to excel all other metals. It is also used in lithographing and bronzing, and to a certain extent in the manufacture of fireworks.

In the Summaries of Tariff Information, 1948, under the caption "BRONZE POWDER OF ALUMINUM AND POWDERED FOIL," the following appears:

*Aluminum bronze powder is a designation long used to describe lustrous, flake-like aluminum powder which finds its greatest use as a pigment for paints, inks, and decorative and protective coatings in general.* Since it ignites easily, it is used also in flares, illuminating rockets and bombs, and fireworks. Different grades are employed in various uses and it is also marketed in the form of aluminum paste for use as pigment or paint. *Aluminum bronze powder is also referred to as powdered foil or simply as aluminum powder.* [Italics supplied.]

Strictly speaking, powdered foil is metal foil beaten into flakes of various degrees of fineness. Aluminum bronze powder is the term applied to the decorative flake-like form of aluminum powder produced by stamping; it is not made from a bronze alloy as its name would suggest. In recent years other processes have been developed for producing aluminum powders for varied uses. The two major types of powder produced by these processes are granular powder, which

is used chiefly for welding and pyrotechnics, and atomized powder, which is used in powder metallurgy and the manufacture of high explosives. If imported, the granular and atomized powders are probably classified as manufactures of metal not specially provided for and dutiable under paragraph 397 (see separate summary).

From Report No. 37 of the Senate Committee on Finance, 71st Congress, 1st session, which was prepared and considered prior to the enactment of the Tariff Act of 1930, we quote the following:

PARAGRAPH 382

All metal powders used in pigments are called bronze powders. The wording is changed to distinguish between such powders of aluminum and of other metal. *The wording "aluminum bronze powders" is further intended to apply only to aluminum powder for use in pigments and not to powdered aluminum for metallurgical purposes.* [Italics supplied.]

From the foregoing legislative history, it is evident that the provision for aluminum bronze powder in paragraph 382(a) is intended to apply to flakelike aluminum powder, which is chiefly used as a pigment for paints, inks, and decorative and protective coatings in general, and with a secondary use in flares, illuminating rockets and bombs, and fireworks.

The testimonial record in this case discloses that the S.A.P. 865 powder does not possess the flakelike structure typical of aluminum bronze powders but for the purposes intended has been produced so that the flakes agglomerate to form particles or granules. The record further discloses that the use to which the imported powder was put was in powder metallurgy for the production of wrought aluminum products, such as extrusions, tubing, wire, sheet, and so forth. This latter fact finds corroboration in Letters Patent No. 2,678,880 (exhibit 2), wherein the statement appears:

The substantially grease-free (lubricant-free) flaky aluminum powder with higher bulkweight according to our invention is not suitable as a pigment for paints as it has only a poor leafing property, but is an excellent raw material for the manufacture of sintered light-metal bodies with good mechanical strength in the heat. * * *

For the foregoing reasons, we hold that the S.A.P. 865 powder in controversy is not encompassed by the provision for aluminum bronze powder in paragraph 382(a) of the Tariff Act of 1930, as modified by the Torquay protocol, *supra*, as contended by the plaintiff. The claim in the protest to that effect is, therefore, overruled.

Judgment will issue accordingly.